# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS KIRKMAN,                          )
                                         )
    Plaintiff and                        )
    Counter Defendant,                   )
                                         )
       v.                              )          1:09CV886
                                         )
THOMAS TISON, ALAN HUTCHINSON,           )
and CUSTOM ROD BUILDERS GUILD,           )
INC.,                                    )
                                         )
    Defendants and                       )
    Counter Plaintiffs.                  )

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court for rulings on: (1) Defendants' Motion for Partial Summary Judgment (Docket Entry 39); (2) Plaintiff's Amended Motion for Summary Judgment (Docket Entry 45); (3) Plaintiff's Motion to Strike the Affidavits [sic] of Cheryl Babineau, the Declaration of Dustin K. Adler, and the Deposition of James Tison (Docket Entry 51); (4) Defendants' Motion to Strike the Affidavit of Thomas Kirkman (Docket Entry 57); and (5) Defendants' Motion to Strike or Alternatively Motion to Allow Surreply (Docket Entry 70).[1] For the reasons that follow, the Court will deny Plaintiff's Amended Motion for Summary Judgment, will grant in part Defendants' Motion for Partial Summary Judgment,

_____

[1] The Parties consented to disposition of this case pursuant to 28 U.S.C. § 636(c). (<u>See</u> Docket Entry 27.)

will deny Plaintiff's Motion to Strike, and will grant Defendants' Motions to Strike.

## I.  BACKGROUND

Plaintiff commenced this case by filing a Complaint in state court asserting state law causes of action for malicious prosecution, libel per se, unfair and deceptive trade practices, and civil conspiracy.  (Docket Entry 2.)[2]  Said claims all relate to Defendants' alleged procuring (on June 8, 2008) of a state misdemeanor summons (the "Summons") charging Plaintiff with sending harassing e-mails.  (Id. at 1-4 and Ex. A.)  The Summons states:

> [T]here is probable cause to believe that on or about [August 8, 2006, to June 8, 2008] in [Guilford County] [Plaintiff] unlawfully and willfully did electronically mail or electronically communicate to another, Members of the Custom Rod Builders Guild, repeatedly for the purpose of abusing and annoying another, Members of the Custom Rod Builders Guild.  To Wit:  [Plaintiff] has sent out e-mails to Advertisers of the Custom Rod Builders Guild telling the Advertisers to withdraw their support of Custom Rod Builders Guild.  This act was in violation of [N.C. Gen. Stat. § 14-196.3(b)].

(Id. at Ex. A.)[3]

According to the Complaint, as of June 8, 2008, Defendants Thomas Tison and Alan Hutchinson served as officers (or agents) and as board members of Defendant Custom Rod Builders Guild, Inc.

---

[2] The Parties later stipulated to the dismissal of the libel claim.  (Docket Entry 11.)

[3] The Summons set an appearance date for Plaintiff of June 18, 2008.  (Docket Entry 2 at Ex. A.)  The Complaint does not indicate whether Plaintiff ever received service of the summons or appeared in court to answer the charge.  (See id. at 1-4.)

("Defendant CRBG") and "Plaintiff was the only 'competitor' of [Defendant CRBG] in North Carolina." (<u>Id.</u> at 1, 2 and 4.)[4]  The Complaint further alleges that Defendant Tison, acting on behalf of Defendant CRBG and at the direction of Defendant Hutchinson, obtained the Summons, that such action injured Plaintiff and his business, and that, "[i]n their capacities as Board Members, Defendants Tison [and] Hutchinson . . . conspired amongst themselves to injure Plaintiff by taking out the spurious [Summons] . . . ." (<u>Id.</u> at 3-4.)  As support for that allegation, in the Complaint and an attachment thereto, Defendant Tison is quoted as stating that "the board [of Defendant CRBG] was directed [by a conclave of the organization's membership] to do something about the anonymous e-mails that have been crippling our organization for years" and that "[a]fter much soul searching and painstaking research [the board members of Defendant CRBG] filed a criminal complaint in the North Carolina Court System." (<u>Id.</u> at 2, Ex. B.)[5]

The Complaint further alleges that Defendants procured the Summons "maliciously, without probable cause" and that it "was subsequently dismissed by the District Attorney for failure to

---

[4] The Complaint does not describe Defendant CRBG's business, except to state that it owns and publishes "a quarterly journal called the *Rod Crafters Journal*." (Docket Entry 2 at 2.) According to Defendants, Defendant CRBG "is a not-for-profit Kansas corporation" that "provides educational services to its members on how to build custom fishing rods." (Docket Entry 41 at 1.)

[5] Moreover, the Summons identifies Defendant Tison as the "Complainant." (Docket Entry 2 at Ex. A.)

-3-

state the elements of a crime." (<u>Id.</u> at 2-3.) It also includes a purported copy of that dismissal, on which (after the line stating that "[t]he undersigned prosecutor enter[ed] a dismissal to the above charge(s) and assign[ed] the following reasons") the box for "No crime is charged" bears a mark. (<u>Id.</u> at Ex. C.) A mark also appears in the box for "Other; (*specify*)," with this explanation: "[I]n the interest of the fair administration of justice; complaint is more civil in nature than criminal and lends itself more to disposition in the civil courts[.]" (<u>Id.</u>) The box for "There is insufficient evidence to warrant prosecution for the following reasons:" does not have a mark. (<u>Id.</u>)

Defendants removed this case to this Court based on diversity jurisdiction. (Docket Entry 1.) After the Court denied a motion to dismiss (<u>see</u> Docket Entry 22 (adopting Docket Entry 15)), Defendants filed an Answer (Docket Entry 23), which included a counterclaim for injunctive relief against Plaintiff in which Defendants ask the Court to "prohibit[] Plaintiff from contacting Defendants or any officer, director, member, sponsor, or any company or person associated with [Defendant CRBG]" and to "prohibit[] Plaintiff from accessing the website and message boards of [Defendant CRBG]" (<u>id.</u> at 5-6).

Thereafter, Defendants filed the instant Motion for Partial Summary Judgment. (Docket Entry 39.) Plaintiff simultaneously responded and filed his own Amended Motion for Summary Judgment

-4-

(Docket Entry 45), to which Defendants responded (Docket Entry 47).
Plaintiff also filed a Motion to Strike (Docket Entry 51),
requesting that the Court strike several of the exhibits Defendants
submitted with their response to Plaintiff's summary judgment
motion (see id. at 1). Defendants, in turn, sought an order
striking an affidavit Plaintiff filed. (Docket Entry 57.)
Finally, Defendants moved the Court to strike part of Plaintiff's
reply to their response to his earlier Motion to Strike or to
permit a surreply. (Docket Entry 70.)

## II. MOTIONS TO STRIKE

### A. _Defendants' Motion to Strike or to Allow Surreply_

In opposing Plaintiff's summary judgment motion, Defendants
relied on various exhibits. (See Docket Entry 47.) Plaintiff
moved to strike certain of those exhibits. (Docket Entry 51.) In
so doing, Plaintiff argued the Court should strike paragraphs 11
and 12 of an affidavit by Cheryl Babineau, because "[t]here is no
foundation laid for [her] testimony" regarding "'responses' from
. . . a service called 'DidTheyReadIt.'" (Docket Entry 54 at 3.)[6]
He also raised hearsay, relevance, improper opinion, and undue
prejudice objections to her affidavit. (See id. at 3-4.)

---

[6] Ms. Babineau described "DidTheyReadIt" as a computer program
that notifies a sender that a recipient has viewed the sender's
email and conveys certain information about that recipient to the
sender. (Docket Entry 47-2, ¶¶ 5, 6, 11, 14.)

Defendants' Response did not directly address Plaintiff's conclusory "foundation" objection to paragraphs 11 and 12 of Ms. Babineau's affidavit, but instead focused on Plaintiff's other objections. (See Docket Entry 59 at 2-10.) Plaintiff replied, in relevant part, by summarizing Defendants' contentions regarding his hearsay, improper opinion, and relevance objections and then stating: "Assuming *arguendo* that [D]efendants' arguments all have merit, the testimony at issue is nevertheless inadmissible because [D]efendants have failed to lay a proper foundation for their [sic] admission." (Docket Entry 66 at 1-2 (emphasis added) (internal footnote omitted).) Plaintiff thereafter offered an extended discussion of why certain parts of Ms. Babineau's affidavit, as well as testimony from two other witnesses, lacked an adequate foundation under Federal Rule of Evidence 901. (See id. at 2-4.)

By way of the instant Motion, Defendants ask the Court to strike Plaintiff's foregoing arguments (in his Reply) about authentication under Rule 901. (See Docket Entry 71 at 2-3.) More specifically, Defendants assert that, "[a]s Plaintiff's arguments related to Rule 901 of the Federal Rules of Evidence were neither raised in the Motion to Strike or Defendants' response to that Motion to Strike, raising them in the Reply is wholly improper and [they] should not be considered by the Court." (Docket Entry 71 at 3.) Under this Court's Local Rules, "[a] reply is limited to discussion of matters newly raised in the response." M.D.N.C.

-6-

LR7.3(h). Plaintiff argues that, in responding to his Motion to Strike, "Defendants _attempt_ for the first time to lay a foundation/ authenticate the 'DidTheyReadIt' program . . . ." (Docket Entry 72 at 2 (citing Docket Entry 59 at 4, 6, 7) (emphasis in original).) Contrary to Plaintiff's foregoing argument, Defendants did not address the issue of foundation/authenticity as to the "DidTheyReadIt" program in the cited response. (_See_ Docket Entry 59 at 2-10.) The briefing by Defendants to which Plaintiff points (_see_ Docket Entry 72 at 2 (citing Docket Entry 59 at 4, 6, 7)) addresses hearsay, not foundation/authenticity. Under these circumstances, the Court concludes that Plaintiff's arguments about Rule 901 go beyond the proper scope of a reply established by Local Rule 7.3(h). Accordingly, pursuant to Local Rule 83.4(a), the Court will exercise its discretion to strike those portions of Plaintiff's Reply that address Rule 901.

### B. _Plaintiff's Motion to Strike the Affidavits [sic] of Cheryl Babineau, the Declaration of Dustin K. Adler, and the Deposition of James Tison_

In the instant Motion, Plaintiff asks the Court to strike averments from three witnesses that Defendants submitted with their response to Plaintiff's summary judgment motion. (Docket Entry 51 at 1.) "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

-7-

stated." Fed. R. Civ. P. 56(c)(4). Moreover, "[a] party may object that the material cited [in a summary judgment motion] to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). For the reasons that follow, the Court will deny the instant Motion.

### i.  Affidavit of Cheryl Babineau

Defendants attached an affidavit from Ms. Babineau (Docket Entry 47-2) to their Response (Docket Entry 47) to Plaintiff's Amended Motion for Summary Judgment (Docket Entry 45). In that affidavit, Ms. Babineau identified herself as "a member of the Custom Rod Builders Guild, Inc. since approximately 2001" (Docket Entry 47-2, ¶ 2) and stated that she received "annoying, harassing and unwanted emails from names and email addresses [she] do[es] not know since approximately 2003," including from the email address "rodmcguild@yahoo.com" (id. ¶¶ 3-4). Ms. Babineau then explained that she attached an internet service called "DidTheyReadIt" to a response she made to a harassing email from rodmcguild@yahoo.com. (Id. ¶¶ 5-6.) According to Ms. Babineau, that service "allow[s] a sender of emails to track approximately when, and by what Internet Protocol ('IP') address an email was read." (Id. ¶ 5.) Ms. Babineau further reported that she received an alert from DidTheyReadIt confirming the opening of the response she made to an email from rodmcguild@yahoo.com and providing the IP address used to do so (id. ¶ 11). Finally, Ms. Babineau averred that, around

-8-

the same time, she also corresponded by email with Plaintiff (id. ¶¶ 7-10) and that Plaintiff used an IP address that matched the IP address identified in the DidTheyReadIt alert (id. ¶¶ 14-15).

The Court need "only consider striking statements that [the moving party] both specifically identif[ies] and support[s] with authority for striking." Wilson v. Budco, 762 F. Supp. 2d 1047, 1058 (E.D. Mich. 2011). Plaintiff's brief in support of his instant Motion describes Ms. Babineau's affidavit as "rife with hearsay," but only points to paragraphs 11 and 12. (Docket Entry 54 at 3.) Those paragraphs state:

> 11. Within 10 minutes of receiving Mr. Kirkman's email containing the above comment, I received my first response from the DidTheyReadIt program I had attached to the email response to rodmcguild@yahoo.com. See DidTheyReadIt Notice, attached hereto as Exhibit "3."
>
> 12. That was the first time the DidTheyReadIt program alerted me to the fact that my email response to rodmcguild@yahoo.com had been opened or read.

(Docket Entry 47-2, ¶¶ 11-12.) According to Plaintiff, "[t]here is no foundation laid for this testimony, e.g., the service is not identified in any way, and the responses allegedly received by Ms. Babineau fall clearly within the hearsay rule." (Docket Entry 54 at 3 (emphasis added).)

Plaintiff's hearsay objection fails because "'nothing "said" by a machine . . . is hearsay.'" United States v. Washington, 498 F.3d 225, 231 (4th Cir. 2007) (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 380 (2d ed. 1994)).

-9-

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Only a *person* may be a declarant and make a statement. . . . [T]he raw data generated by [] machines do not constitute 'statements,' and [] machines are not 'declarants.'" Washington, 498 F.3d at 231 (emphasis in original). Ms. Babineau's description of the automated alert she received from DidTheyReadIt thus does not constitute hearsay.

Nor does Plaintiff's "foundation" objection warrant striking paragraphs 11 and 12 of Ms. Babineau's affidavit. Plaintiff did not develop this objection in any meaningful way or cite any authority to support it. (See Docket Entry 54 at 3.) By Local Rule, all arguments "shall refer to all statutes, rules and authorities relied upon." M.D.N.C. LR7.2(a)(4). Moreover, "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal citation and quotation marks omitted). In light of the foregoing authority, the Court declines to strike the challenged portion of Ms. Babineau's affidavit based on Plaintiff's conclusory "foundation" objection.

Next, Plaintiff argues that Ms. Babineau's "conclusion" about the "'IP address, which [Plaintiff] was using to communicate with

[her]' . . . is totally irrelevant to the question of whether [Plaintiff] sent the anonymous emails [D]efendants complain of" (Docket Entry 54 at 3 (quoting Docket Entry 47-2, ¶ 15)) and "has no 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'" (id. at 3-4 (quoting Fed. R. Evid. 401)).  To the contrary, evidence that Ms. Babineau received emails from Plaintiff originating from the same IP address as the one apparently utilized by rodmcguild@yahoo.com does have potential relevance in this case.  First, such evidence (particularly in conjunction with other evidence) might support an inference that Plaintiff did send harassing emails (as Defendants' counterclaim contends).  Second, such evidence bears upon the question (material to Plaintiff's claims) of whether (at the time they procured the Summons) Defendants had a basis (whether ultimately proven correct or not) to believe Plaintiff sent harassing emails.  The Court thus will not strike Ms. Babineau's affidavit based on Plaintiff's relevance objection.

Plaintiff further argues that "the methodology used by Ms. Babineau runs afoul of the prohibition set forth in evidentiary Rule 701 which prohibits use of 'technical, or other specialized knowledge within the scope of Rule 702.'" (Docket Entry 54 at 4 (quoting Fed. R. Evid. 701(c)).)  Rule 701, governing opinion testimony by lay witnesses, states:

-11-

> If a witness is not testifying as an expert, testimony _in the form of an opinion_ is limited to one that is:
>
> (a)  rationally based on the witness's perception;
>
> (b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)  not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 (emphasis added).  Plaintiff does not identify the "methodology" to which he objects (_see_ Docket Entry 54 at 4) but, regardless, Rule 701 does not provide a basis for striking Ms. Babineau's affidavit because she has offered no statement that constitutes an "opinion" (_see_ Docket Entry 47-2, ¶¶ 1-15). Instead, Ms. Babineau merely has relayed a factual account of her use of the DidTheyReadIt program.  (_Id._ ¶¶ 5-15.)

Finally, Plaintiff asserts that "Ms. Babineau's testimony is 'substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury,' [Fed. R. Evid. 403], given that [D]efendants [sic] own expert has concluded that [Plaintiff] cannot be identified as the author/sender of any of the allegedly offending emails." (Docket Entry 54 at 4 (citing Docket Entry 46-4 at 2-3).)  The fact that the expert retained by Defendants to examine Plaintiff's computer for purposes of this litigation failed to find evidence that permitted him to positively identify Plaintiff as the sender of any specific harassing emails does not make inadmissibly confusing or misleading all other evidence (regarding events prior to the procuring of the Summons) that

-12-

reasonably could have led Defendants to believe Plaintiff did send harassing emails. Accordingly, the Court rejects Plaintiff's objection under Rule 403.

In sum, Plaintiff has failed to provide a valid basis for the Court to strike Ms. Babineau's affidavit.[7]

## ii. Declaration of Dustin K. Adler

In support of his request that the Court strike the Adler Declaration, Plaintiff simply states that "[t]he Adler Declaration . . . relied on by [D]efendants suffer[s] from all the same infirmities as the Babineau affidavit. [Mr. Adler has not] been designated as an expert, and [his] lay opinion employs the same impermissible 'cloak' and dagger 'technical or specialized knowledge' as Ms. Babineau, except more so." (Docket Entry 54 at 4.) The Court declines to undertake any analysis of Plaintiff's blanket evidentiary objections to the Adler Declaration based on mere reference to his challenges to Ms. Babineau's affidavit. See Wilson, 762 F. Supp. 2d at 1058. Instead, the Court will consider only Plaintiff's somewhat more specific contention that Mr. Adler offered impermissible expert opinions.

As to that matter, the Court notes that, in his Declaration, Mr. Adler identified himself as the "author of the *ZeroForum* software that powers the *Custom Rod Builders Guild* forum[s] at

---

[7] Nonetheless, as the discussion below reflects, Plaintiff's summary judgment motion fails without consideration of Ms. Babineau's averments about the DidTheyReadIt alert.

-13-

http://forums.rodguild.com/." (Docket Entry 47-8, ¶ 5.) According to Mr. Adler, after Defendants began receiving harassing emails, they asked him to "electronically log all accesses to the forums" (id. ¶ 7) and, upon doing so, he noticed that one IP address, 72.11.37.181, regularly accessed Defendant CRBG's forums (id. ¶ 8). Mr. Adler further averred that, to see if the harassing emails came from that IP address, he set up a fake forum that only the user of that IP address could view. (Id. ¶¶ 10-14.) The log thereafter reportedly showed that the suspected IP address did access the fake forum (id. ¶ 17) and, within several days, members of Defendant CRBG reportedly received anonymous emails that referenced matters from the fake forum (id. ¶¶ 20-24).

Based on the foregoing circumstances, Mr. Adler drew a number of conclusions:

> 18. Due to the technical restriction of the cloaking feature, the logs show conclusively that only the IP address 72.11.37.181 read the "*Southeast Rodbuilding Class*" topic. No other accesses to the topic ever occurred.

> 19. It follows logically that only the person associated with the 72.11.37.181 IP address could possibly know the contents of the message.

> . . .

> 25. Only the 72.11.37.181 IP address could read the fictitious topic, hence the logs show that 72.11.37.181 is the only IP address that ever accessed the topic. The information contained within this cloaked topic was only available to the user associated with the IP 72.11.37.181, hence the individual associated with this address must have sent the five email messages mentioned above.

26. I have reviewed the response of North State Communications to a subpoena for the customer associated with the 72.11.37.181 IP address at the time that the fictitious topic was read, and the ISP reported the customer as one "Tom Kirkman, 2420 English Road W, High Point, NC, 27262."

27. Hence, by sending anonymous emails about a topic that *he and only he could possibly view*, the facts clearly show that this "Tom Kirkman" is the perpetrator and author of the anonymous emails in question.

(Id. ¶¶ 18-19, 25-27 (internal citations omitted) (emphasis in original).)

Rule 701 "'does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony* . . . .'" United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006) (emphasis in original) (quoting Fed. R. Evid. 701 advisory committee notes). Moreover, "a person with specialized training does not testify as an expert by giving first-hand participant testimony, even though it appears to be expert testimony." Indemnity Ins. Co. of N. Am. v. American Eurocopter LLC, 227 F.R.D. 421, 424 (M.D.N.C. 2005) (Eliason, M.J.) (citing Gomez v. Rivera Rodriquez, 344 F.3d 103, 113 (1st Cir. 2003)). If that person "played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events," a party need not identify that witness as an expert. Gomez, 344 F.3d at 113-14.

The majority of Mr. Adler's testimony concerns his personal knowledge of the investigation into who sent the harassing emails,

-15-

including his use of the fake forum to uncover the sender of harassing emails. No grounds exist to strike such evidence under Rule 701. On the other hand, some of Mr. Adler's deductions, although rationally based on his observations, cross the line into the territory of ultimate conclusions (see, e.g., Docket Entry 47-8, ¶¶ 25-27), which even an expert usually may not offer, see United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). The Court, however, can exclude any such ultimate conclusions from consideration as to summary judgment issues without formally entering an order striking them. See, e.g., Williams v. Computer Scis. Corp., No. 1:08CV41, 2010 WL 3395293, at *4 (M.D.N.C. Aug. 23, 2010) (unpublished) (Sharp, M.J.) ("[T]he Court will not strike these exhibits but will consider them only to the extent that they comply with Fed. R. Civ. P. 56(c)(2).").

### iii. Deposition of James Tison

Finally, Plaintiff objects to deposition testimony by James Tison on the grounds that it too contains improper expert opinion. (Docket Entry 54 at 4.) Specifically, Plaintiff asserts:

> James Tison's technical and specialized investigation is particularly suspect, given that he had no prior experience in the investigation of anonymous emails or trying to determine the author(s) of the same. Tison Dep. p.74. [James] Tison says he was doing this for his brother, Defendant Thomas Tison: "I may have just said I was messing around - you know, doing this for my brother." Id.p.23. But his entire study, including exhibits, was premised on "cutting and pasting" emails sent to him by his brother. Tison Dep. pp. 45-49, 51.

(Id. at 4 (citing Docket Entry 47-6) (internal footnote omitted).)

James Tison testified that, in an effort to identify the sender of the harassing emails, he registered an email address and a fake name with Plaintiff's website (Docket Entry 47-6 at 6; <u>see also</u> Docket Entry 47-7 at 4) and also registered that fake name with Defendant CRBG's website (Docket Entry 47-6 at 9-10; <u>see also</u> Docket Entry 47-7 at 5-6).  James Tison further averred that he registered the email address in question on Plaintiff's website as "hidden from the public" (Docket Entry 47-6 at 7) and that he never used that email address for any other purpose (<u>id.</u> at 9).  According to James Tison, Defendant Tison thereafter would send James Tison "paragraphs or things, and [James Tison] would just cut and paste [them] into the . . . bulletin board" on Defendant CRBG's website under the fake name.  (<u>Id.</u> at 12-13; <u>see also</u> Docket Entry 47-7 at 9-27.)  James Tison testified that, not long afterwards, he began receiving emails from someone identifying himself as "Charlie Burris" at the email address he registered on Plaintiff's website.  (<u>See</u> Docket Entry 47-6 at 21-31; <u>see also</u> Docket Entry 47-7 at 28-49.)  Those emails reportedly referenced posts James Tison had made on Defendant CRBG's website.  (Docket Entry 47-6 at 22.)

The Fourth Circuit has noted that "a critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in possession of the jurors . . . ." <u>Perkins</u>, 470 F.3d at 155 (internal citations omitted).  Nothing in James Tison's

-17-

testimony suggests he has specialized knowledge or training beyond that of a typical juror. Moreover, James Tison related information about activities in which he participated. Plaintiff has not shown that such evidence runs afoul of Rules 701 and 702. The Court thus will not strike James Tison's deposition testimony.

### C. Defendants' Motion to Strike Plaintiff's Affidavit

Defendants have moved to strike an affidavit Plaintiff filed (Docket Entry 49), citing various grounds, including untimeliness and failure to comply with Local Rule 7.3(h) (see Docket Entry 58 at 2). As Plaintiff appears to contend (see Docket Entry 69 at 1-4), Plaintiff's affidavit would qualify as timely if it constituted a reply to Defendants' Response (Docket Entry 47) to Plaintiff's Amended Motion for Summary Judgment (Docket Entry 45). Moreover, Plaintiff argues that: (1) his affidavit authenticates documents he previously submitted (apparently to show he suffered actual damages to the extent he must make such a showing to establish entitlement to summary judgment on his unfair and deceptive trade practices claim) (Docket Entry 69 at 2); and (2) Leaven v. Philip Morris USA Inc., No. 1:04CV00907, 2006 WL 1666741, at *3 (M.D.N.C. June 6, 2006) (unpublished) (Beaty, J.), authorizes such a filing as a reply (Docket Entry 69 at 3).

Under this Court's Local Rules, "[a] reply is limited to discussion of matters newly raised in the response." M.D.N.C. LR7.3(h). In the case cited by Plaintiff, the Court found that the

-18-

"affidavit [in question] [wa]s responsive to issues newly raised in [the opposing party's] Response . . . as [that Response] question[ed] the authenticity of [certain] previously filed documents." <u>Leaven</u>, 2006 WL 1666741, at *3. In this case, by contrast, Defendants did not raise questions concerning the authenticity of the documents Plaintiff's affidavit/reply purports to authenticate. (<u>See</u> Docket Entry 47 at 9-14.) Plaintiff's affidavit/reply thus does not address issues newly raised in a response and the Court therefore will exercise its discretion under Local Rule 83.4(a) to strike it.

### III. SUMMARY JUDGMENT MOTIONS

Defendants have moved for summary judgment "on Plaintiff's claim [under] the unfair and deceptive trade practices act and his claim for punitive damages." (Docket Entry 39 at 1.) Plaintiff, in turn, seeks summary judgment on "Defendants' Counterclaim, as well as partial summary judgment (liability only) in his favor on the Complaint." (Docket Entry 45 at 1.) The Court will enter summary judgment for Defendants on Plaintiff's unfair and deceptive trade practices claim, but otherwise will deny summary judgment for either side; however, the Court expressly reserves the question of whether any request for punitive damages can go to the fact-finder.

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita, 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252; see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### A. Malicious Prosecution

Plaintiff moves for summary judgment in his favor on his malicious prosecution claim. (See Docket Entry 46 at 5-7.) Under North Carolina law, Plaintiff must prove the following elements to

make out this claim: "'(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff.'" <u>Swick v. Wilde</u>, No. 1:10-cv-303, 2012 WL 3780350, at *26 (M.D.N.C. Aug. 31, 2012) (unpublished) (Schroeder, J.) (quoting <u>Best v. Duke Univ.</u>, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994)). As to the second and third elements, Plaintiff asserts that "neither [Defendant] Tison, nor anyone else (including Defendants [sic] 'expert') can establish that any of the e-mails complained of came from Plaintiff Thomas Kirkman. Probable cause is therefore lacking, and malice is inferred." (Docket Entry 46 at 7.) Plaintiff's reasoning in this regard suffers from fatal flaws.

First, Plaintiff, not Defendant, bears the burden of proof on the lack of probable cause and malice elements. Second, a determination of those elements could not turn on whether Plaintiff actually sent the harassing emails. In other words, to avoid liability, <u>Defendants do not have the burden</u> of proving that Plaintiff <u>in fact</u> sent the emails. Rather, to the extent a question related to the identity of the sender of the emails constitutes a matter material to this claim, <u>Plaintiff has the burden</u> of proving that, when Defendants procured the charge against him, they lacked <u>probable cause</u> to believe he sent the emails.

-21-

"Where the claim is one for malicious prosecution, probable cause has been properly defined as the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Best, 337 N.C. at 750 (internal brackets, ellipses, and quotation marks omitted). Plaintiff has made no argument that, given what Defendants then knew, they lacked probable cause to initiate criminal proceedings against him, let alone that the evidence, taken in the light most favorable to Defendants, would require such a finding as a matter of law. (See Docket Entry 46 at 5-7.)[8]  The Court therefore will

_____

[8]  In his brief in support of his instant Motion, Plaintiff simply recounts almost verbatim a portion of the discussion of the malicious prosecution claim in the undersigned's memorandum concluding that Defendants had not shown that said claim failed as a matter of law. (Compare Docket Entry 15 at 5-8, with Docket Entry 46 at 5-6.)  That discussion does not entitle Plaintiff to summary judgment.  Although, as Plaintiff pointed out, "[o]ne may reasonably view the prosecutor's designation that 'no crime is charged' (Docket Entry 2 at Exhibit C) as a declaration that the criminal summons procured by Defendants wrongly asserted that probable cause existed" (Docket Entry 46 at 6; see also Docket Entry 15 at 8 (containing same language)), Plaintiff has offered no argument to suggest that interpretation represents the only reasonable view (see id.).  Nor could he, given the other language on the dismissal form reflecting the prosecutor's statement that Defendants' "complaint is more civil in nature than criminal and lends itself more to disposition in the civil courts" (Docket Entry 2 at Ex. C (emphasis added)).  Moreover, as the undersigned made clear immediately after the portion of the discussion selectively cribbed by Plaintiff, given that a malicious prosecution claim requires a plaintiff to prove that a defendant lacked information that would cause a reasonable person to file a charge, a substantial question exists as to "what, if any, relevance a prosecutor's [later] statement on a dismissal form has upon the determination of the presence or absence of probable cause or malice [at the time of the filing of a charge]." (Docket Entry 15 at 8 (internal parenthetical omitted).)

-22-

not enter summary judgment for Plaintiff on his malicious prosecution claim.

### B. Defendants' Counterclaim

Plaintiff's argument for summary judgment in his favor on Defendants' counterclaim states (in its entirety): "Defendants' Counterclaim for injunctive relief rests entirely on Defendants' claim that Plaintiff is the anonymous mailer of the allegedly offensive e-mails. Without proof that he is, Defendants' Counterclaim should be dismissed under the standards set forth in *Celotex* and *Matsushita*." (Docket Entry 46 at 7 (internal citations omitted).) This conclusory argument fails because the record does contain evidence which, if taken in the light most favorable to Defendants, would permit a reasonable fact-finder to determine that Plaintiff sent the emails at issue.

First, the testimony of Mr. Adler indicates that the IP address from which at least some of the harassing emails originated is likely the same IP address that accessed the fake forum he set up (see Docket Entry 47-8, ¶¶ 15-24) and, according to North State Communications, LLC ("North State"), that IP address is associated with a "Tom Kirkman" (see Docket Entry 47-9 at 6).[9] Second, James Tison testified that he received emails from a "Charlie Burris" (Docket Entry 47-6 at 21), one of the names Ms. Babineau identified

---

[9]    Ms. Babineau also averred that Plaintiff used that same IP address to communicate with her. (See Docket Entry 47-2, ¶ 15.)

as a sender of "annoying, harassing and unwanted emails" (Docket Entry 47-2, ¶ 4). Mr. Tison further averred that he received these "Burris emails" at an email address only the owner or moderator of Plaintiff's website could view. (Docket Entry 47-6 at 7, 21-22.) Given this evidence, a material factual dispute exists, precluding summary judgment for Plaintiff on Defendants' counterclaim.

### C. Civil Conspiracy

According to Plaintiff, North Carolina law defines a conspiracy as "'an agreement between two or more individuals to do <u>an unlawful act</u> or to do a lawful act in an <u>unlawful way</u>.'" (Docket Entry 46 at 8 (emphasis added) (quoting <u>State v. Dalton</u>, 168 N.C. 204, 205, 83 S.E. 693, 694 (1914)).) Plaintiff appears to view his alleged malicious prosecution as the "unlawful act" or "unlawful way" of acting at the core of Defendants' alleged conspiracy. As discussed above, Plaintiff has not shown an entitlement to judgment as a matter of law for any such malicious prosecution. The Court therefore denies summary judgment on Plaintiff's civil conspiracy claim because its resolution depends on the same material fact question that forecloses summary judgment on his malicious prosecution claim.

### D. Unfair and Deceptive Trade Practices

Both Defendants and Plaintiff have moved for summary judgment on Plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act (the "UDTPA"). (<u>See</u> Docket Entry 39 at 1;

-24-

Docket Entry 41 at 6-8; Docket Entry 45 at 1; Docket Entry 46 at 9-10.)  "To recover under the UDTPA, [a plaintiff] must show: (1) the defendant engaged in conduct that was in or affecting commerce, (2) the conduct was unfair or had the capacity or tendency to deceive, and (3) the plaintiff suffered actual injury as a proximate result . . . ."  Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 164 (4th Cir. 2012) (internal quotation marks omitted) (construing North Carolina law).

### i.  Plaintiff's Motion

To satisfy the second element of his UDTPA claim, Plaintiff again relies on Defendants' alleged malicious prosecution of him. (See Docket Entry 46 at 9.)  For reasons previously stated, the Court has denied summary judgment for Plaintiff on his malicious prosecution claim and thus the Court will deny summary judgment for Plaintiff on his UDTPA claim.

### ii.  Defendants' Motion

Defendants argue that Plaintiff has "utterly failed to produce any evidence to support one of the necessary elements of the [UDTPA] tort - that Plaintiff has suffered 'actual damages.'" (Docket Entry 47 at 9-10.)  Plaintiff first responds to Defendants' claim by alleging that his UDTPA claim "is premised entirely on the claim for malicious prosecution, and claims for malicious prosecution require no showing of actual damage." (Docket Entry 46 at 10.)  That assertion does not alter the fact that North Carolina

law requires proof of actual damages as an element of a UDTPA claim. See Belk, Inc., 679 F.3d at 164 (defining elements of UDTPA claim under North Carolina law to include proof by the plaintiff of "actual injury" proximately caused by conduct of the defendant); accord Southwestern Life Ins. Grp. v. Morehead, 245 F. App'x 304, 307 (4th Cir. 2007) ("[T]he district court properly rejected [the plaintiff's] unfair trade practices claim [under North Carolina law] because she was unable to prove any actual damages resulting from the violation."); Simaan, Inc. v. BP Prods. N. Am., Inc., 395 F. Supp. 2d 271, 277 (M.D.N.C. 2005) (Tilley, C.J.) ("In North Carolina claims of . . . unfair and deceptive trade practices require actual damages."); Piedmont Inst. of Pain Mgmt. v. Staton Found., 157 N.C. App. 577, 589-90, 581 S.E.2d 68, 76 (2003) ("Certain torts require as an essential element that plaintiff incur actual damage. Relevant to the present case, these torts include . . . unfair and deceptive trade practices." (internal citations, ellipses, and quotation marks omitted)).[10]

Next, Plaintiff responds that, "even if a showing of actual damages is required, [he] has made that showing, at least for summary judgment purposes." (Docket Entry 46 at 10.) As support for that conclusory assertion, Plaintiff cited an affidavit he executed, as well as an affidavit from Steve Holden (see id. at 10

_____

[10] Nor, in light of this authority, can Plaintiff avoid summary judgment by proposing to substitute nominal damages for actual damages. (See Docket Entry 46 at 10.)

-26-

(citing Docket Entries 46-2, 46-3), and pointed back to an earlier portion of his brief (see id. (citing id. at 8)).  The affidavits by Plaintiff and Mr. Holden make no mention of damages.  (See Docket Entries 46-2, 46-3.)  The cross-referenced passage of Plaintiff's brief states:  "The damages caused by acts committed pursuant to the conspiracy was [sic] a substantial decrease in gross receipts in the year of the [S]ummons down from a high in 2007 of $122,518.00 to a low in 2008 of $91,568.00." (Id. at 8 (citing Docket Entries 46-5, 46-6) (emphasis added).)[11]

"The fallacy in this method of proof is that it mistakes loss of gross receipts for loss of profits, which is the actual damage." Electric Furnace Corp. v. Deering Milliken Research Corp., 325 F.2d 761, 766 (6th Cir. 1963) (emphasis added).  As another court put it (in evaluating another tort requiring proof of "actual" damages):

> With respect to its alleged business losses, the plaintiff has provided a flawed itemization. [The plaintiff's] calculation of damages is based on the erroneous assumption that the defendants may be held liable for the plaintiff's forgone gross receipts, not merely its forgone profits. . . .  By failing to delineate its actual losses, [the plaintiff] has necessarily failed to link its purported losses to the defendants' alleged deeds.  These deficiencies alone provide grounds for summary judgment against the plaintiff on this claim.

---

[11]    The cited documents consist of tax records showing the cited gross receipts figures.  (See Docket Entries 46-5, 46-6.)

<u>Western Meat Co., Inc. v. IBP, Inc.</u>, 683 F. Supp. 415, 421 (S.D.N.Y. 1988) (internal citations and footnote omitted) (emphasis added).

In other words, Plaintiff effectively would have the fact-finder speculate that a reduction in gross receipts as between 2007 and 2008 reflected a reduction in profits (without any proof of year-to-year expenses). Such an approach does not suffice:

> "The principle which will not allow the recovery of damages when their existence rests solely on <u>speculation</u> applies both to the fact of damages and to their cause. Thus, <u>a plaintiff cannot recover damages by proving only that the defendant has unlawfully violated some duty owing to the plaintiff, leaving the trier of fact to speculate as to the damages</u>; he must go further and prove the nature and extent of the damage suffered by the plaintiff and that the breach of duty was the legal cause of that damage. Leaving either of these damage questions to <u>speculation</u> on the part of the trier of fact will prevent recovery."

<u>Food Lion, Inc. v. Capital Cities/ABC, Inc.</u>, 964 F. Supp. 956, 960 (M.D.N.C. 1997) (quoting <u>People's Center, Inc. v. Anderson</u>, 32 N.C. App. 746, 748, 233 S.E.2d 694, 696 (1977)) (emphasis added), <u>aff'd in relevant part</u>, 194 F.3d 505, 512-14 (4th Cir. 1999); <u>see also</u> <u>Nixon v. Alan Vester Auto Grp.</u>, No. 1:07CV839, 2008 WL 4544369, at *6 n.7 (M.D.N.C. Oct. 8, 2008) (unpublished) (Eliason, M.J.) ("[Under North Carolina law,] [t]o recover actual damages, Plaintiff must identify the damage or loss and show they are the natural and probable result of the tortfeasor's conduct, and be based on a standard which will allow calculation of the amount."),

-28-

<u>recommendation adopted in relevant part</u>, 2009 WL 382743 (M.D.N.C. Feb. 12, 2009) (unpublished) (Tilley, C.J.).

Under these circumstances, Plaintiff has failed to come forward with sufficient evidence of actual damages to permit a reasonable fact-finder to render judgment in his favor on his UDTPA claim.[12]  The Court therefore will enter summary judgment for Defendants on said claim.

### E.  Punitive Damages

Finally, Defendants argue that Plaintiff has "utterly failed to produce any evidence that Defendants acted with 'actual malice' . . . [which] is required if Plaintiff is seeking punitive damages in a malicious prosecution claim."  (Docket Entry 47 at 14-15.) Plaintiff responds by claiming that "the groundlessness of the suit may, in many instances, be so obvious and palpable that the existence of malice may be inferred from it. . . . [Alternatively,] maliciously prosecuting a civil [sic] action surely evinces wilful or wanton conduct . . . [which] is defined as conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other

_____

[12] Plaintiff's failure on this point is only heightened by his concessions, in his deposition, that:  (1) he would not characterize his business as having suffered a "loss of income," but rather "stagnation of income" or "a leveling off" (Docket Entry 41-1 at 35); and (2) the national economic "trouble" occurring around the same time "had some impact" in that regard (<u>id.</u>).

-29-

harm." (Docket Entry 46 at 10-11 (internal citations and quotation marks omitted).) The Court concludes that it would benefit from further argument from the parties regarding exactly what showing beyond that necessary to a malicious prosecution claim will suffice to support an award of punitive damages under North Carolina law. Accordingly, the Court will reserve determination of whether to allow Plaintiff's request for punitive damages to go to the fact-finder. <u>See generally</u> <u>Speedway Promoters, Inc. v. Hooter's of Am., Inc.</u>, 123 F. Supp. 2d 956, 965 (W.D.N.C. 2000).

## IV. CONCLUSION

Because one of Plaintiff's filings and part of another violate the Court's Local Rules regarding the scope of a permissible reply, the Court will grant Defendants' Motions to Strike. Plaintiff, however, has not established an adequate basis for his Motion to Strike evidence Defendants tendered in opposition to his summary judgment motion. In addition, Plaintiff has failed to produce sufficient evidence of actual damages and the Court therefore will enter summary judgment for Defendants on Plaintiff's UDTPA claim. As to the remainder of Plaintiff's claims and Defendant's counterclaim, the Court concludes that Plaintiff has not shown an entitlement to judgment as a matter of law and thus denies his summary judgment motion. Finally, the Court declines to enter summary judgment for Defendants on Plaintiff's request for punitive damages, pending further argument from the Parties.

-30-

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike or Alternatively Motion to Allow Surreply (Docket Entry 70) is **GRANTED** in that the portion of Plaintiff's Reply (Docket Entry 66) that concerns Federal Rule of Evidence 901 is **STRICKEN.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Affidavits [sic] of Cheryl Babineau, the Declaration of Dustin K. Adler, and the Deposition of James Tison (Docket Entry 51) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike the Affidavit of Thomas Kirkman (Docket Entry 57) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment (Docket Entry 39) is **GRANTED IN PART** in that the Court enters judgment as a matter of law for Defendants on Plaintiff's UDTPA claim, but reserves the question of whether to submit Plaintiff's request for punitive damages to the fact-finder.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Docket Entry 45) is **DENIED.**


                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                         **United States Magistrate Judge**
October 15, 2012